TELECOMM TECHNICAL SERVICES, INC., RealCom Office Communication, Nova USA Telecommunications Co., American Telecom Corporation, DD Hawkins Communications, Inc., CMS Communications, Inc., Start Technologies Corporation, Olde York Valley Inn, Plaintiffs,

v.

SIEMENS ROLM COMMUNICATIONS, INC., Defendant.

Civil Action No. 1:95–CV–0649–WBH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 4, 1997.

---

John Kirk Train, III, Michael P. Kenny, Alston & Bird, Atlanta, GA, Mark C. Hansen, Michael K. Kellogg, Steven F. Benz, Kellogg Huber Hansen Todd & Evans, Washington, DC, pro hac vice, Robert Stephen Berry, James Daniel Leftwich, Berry & Leftwich, Washington, DC, pro hac vice, for plaintiffs and counter–defendants Telecom Technical Services, Inc., RealCom Office Communication, Inc., Nova USA Telecommunications Co. and American Telecom Corp.

John Kirk Train, III, Michael P. Kenny, Alston & Bird, Atlanta, GA, Mark C. Hansen, Michael K. Kellogg, Steven F. Benz, Kellogg Huber Hansen Todd & Evans, Washington, DC, pro hac vice, Robert Stephen Berry, James Daniel Leftwich, Michael J. Quinn, Berry & Leftwich, Washington, DC, pro hac vice, for plaintiffs and counter–defendants DD Hawkins Communications, Inc., Sharecom Div. of Start Technologies Corp., CMS Communications, Inc. and Olde York Valley Inn.

Charles E. Campbell, Hicks Maloof & Campbell, Atlanta, GA, Kenneth A. Gallo, Keith E. Pugh, Jr., Howrey & Simon, Washington, DC, pro hac vice, Otis W. Carroll, Jr., James Patrick Kelley, Office of Otis W. Carroll, Jr., Tyler, TX, pro hac vice, for defendant and counter–claimant Rolm Co.

Charles E. Campbell, Jeffery W. Cavender, Hicks Maloof & Campbell, Atlanta, GA, Kenneth A. Gallo, Keith E. Pugh, Jr., Howrey & Simon, Washington, DC, pro hac vice, for defendant Siemans Rolm Communications, Inc.

## ORDER

HUNT, District Judge.

This case is before the Court on the following motions: (1) plaintiffs Telecomm Technical Services, Inc. ("Telecomm"), RealCom Office Communication, Inc. ("RealCom"), Nova USA Telecommunications Co. ("Nova")[1], American Telecom Corporation ("ATC"), DD Hawkins Communications, Inc. ("DD Hawkins"), Start Technologies Corporation ("Start")[2], CMS Communications, Inc. ("CMS"), and Olde York Valley Inn's Motion to Strike Letter Communication to the Court [189]; (2) plaintiffs' Motion for Protective Order [190–1]; (3) plaintiffs' Motion for Class Certification [200–1]; (4) plaintiffs' Motion for Pretrial Order [221–1]; (5) defendant Siemens Rolm Communications, Inc.'s[3] ("Rolm") Motion for Leave to File Surreply in Opposition to Plaintiffs' Emergency Motion for Protective Order to Prohibit Defendant from Communicating with Absent Class Members [178–1]; (6) defendant's Motion to Compel Answers to Interrogatories Related to Class Discovery [183–1]; (7) defendant's Motion to Compel Production of Documents Relating to Class Certification [187–1]; (8) defendant's Motion to Compel Answers to Deposition Questions [197–1]; (9) defendant's Second Motion to Compel Production of Documents Relating to Class Certification [199–1]; (10) defendant's Third Motion to Compel Production of Documents Relating to Class Certification [205–1]; (11) defendant's Motion to Compel Answers to Deposition Questions by Richard A. Kuehn [206–1]; (12) defendant's Motion to Strike Plaintiffs' New Evidence Submitted with Reply Memorandum in Support of Motion for Class Certification [222–1] or, in the Alternative, to File a Surreply Brief [222–2]; (13) defendant's Motion for Leave to File Memorandum with Respect to New Developments Relevant to Plaintiffs' Motion for Class Certification [231–1]; and (14) parties' Joint Motion for Leave to File Corrected Copy of the Joint Preliminary Statement and Scheduling Order [176–1].

## I. BACKGROUND OF CLASS ALLEGATIONS

A. *The Parties*

Defendant Siemens Rolm Communications, Inc., sells and services Rolm-brand Private

---

1. There appears to be a question regarding whether Nova has been identified properly.

2. Originally, Start was a plaintiff by its division, Sharecom, but that division has been dissolved leaving Start as the named plaintiff.

3. Siemens Rolm Communications, Inc. formerly was known as the Rolm Company.

Branch Exchange ("PBX") telephone switching equipment.[4] PBX equipment is used typically by businesses to receive and make telephone calls where fifty or more telephone lines are necessary for the business. Rolm sells not only PBXs but also the parts which comprise the PBX, both new and used, and the software used to run the switch. Rolm additionally offers service and maintenance for PBXs already in use.

Plaintiffs Telecomm, DD Hawkins, RealCom, CMS, Nova, and ATC all allege to be or to have been independent service organizations ("ISOs") actually competing with Rolm in the area of servicing Rolm PBX equipment.[5] Start is a "self-service" ISO, which means that it services the Rolm PBX equipment used in its business. Although Start has provided service to other businesses at various times, according to the Second Amended Complaint, it is not an actual competitor of Rolm at this time. Instead, it would be considered a "potential" competitor. Plaintiffs Start and RealCom also allege that they are "End Users" of Rolm PBX equipment in that they employ Rolm PBX equipment to provide telephone exchange services *and* have used Rolm to maintain or upgrade the PBX equipment.[6] Plaintiff Olde York Valley Inn has used Rolm PBX equipment and, at some point, purchased service directly from Rolm. None of these proposed End User class representatives currently uses or purchases Rolm-provided service for Rolm PBXs.

### B. *Allegations of Second Amended Complaint*

Plaintiffs bring this action pursuant to sections four and sixteen of the Clayton Act, 15 U.S.C. §§ 15[7] and 26[8] for damages and injunctive relief for violations of sections one and two of the Sherman Act, 15 U.S.C. §§ 1[9] and 2[10]. Plaintiffs allege that Rolm has violated section one of the Sherman Act through

4. "A PBX is called a 'switch' because it uses a computer automatically to route (or switch) calls among various telephone extensions on the End User's premises or between a telephone extension and an external line." Pls.' Mem. in Supp. of Mot. for Class Certification at 5.

5. ISOs are defined in the Second Amended Complaint as businesses or persons who either service Rolm PBXs leased or owned by others, or by the ISO itself in a "self-service" manner. ISOs are independent from Rolm and are not authorized by Rolm to act as its agent, a distributor of parts, or a service-provider. Rolm maintains a network of authorized distributors/service-providers which are distinct from the ISOs.

6. The term "End Users" herein refers both to users of Rolm PBXs and to those who also have had Rolm provide service for the PBXs. As used in the class definition, End Users are limited to those who have used Rolm-provided service for their Rolm PBXs.

7. Section 15 provides in pertinent part that any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.
§ 15(a). This is the treble damages provision under which End User class seeks relief.

8. Section 26 states:

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue. . . .
§ 26.

9. Section 1 provides:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.
§ 1.

10. Section 2 states:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons[ ] to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony.
§ 2. Private antitrust actions are authorized through sections 15 and 26 of the Clayton Act as cited *supra* notes 6 and 7.

an illegal tying arrangement by which Rolm requires End Users to purchase Rolm-provided service to obtain Rolm proprietary parts[11] for the Rolm PBX equipment ("Count One"). Plaintiffs contend that End Users often need Rolm-manufactured parts without requiring the Rolm-provided service. However, plaintiffs argue that Rolm will not release the parts to End Users either who do not agree to have Rolm provide the service related to the needed parts or who do not agree that they will use the parts themselves and not "transfer" those parts to third parties. Thus, plaintiffs allege that Rolm has violated section one by suppressing competition in the United States for sale of service for the PBXs thus injuring the ISOs and that Rolm has overcharged End Users for service thus entitling the End Users to damages.

In Count Two, plaintiffs similarly allege that Rolm requires End Users to purchase Rolm-provided service to get access to Rolm proprietary software[12] which is needed to operate the Rolm PBX. Plaintiffs complain that Rolm's actions in tying the access to software to the purchase of Rolm-provided service is in violation of the antitrust laws by suppressing competition and allowing price discrimination.

Lastly, plaintiffs allege that Rolm has an unlawful monopoly over the market for service of Rolm PBXs, or in the alternative, has attempted to exercise an unlawful monopoly over that market. Their contentions include that Rolm

has the power to control prices or exclude competition in the relevant market for service of ROLM PBXs by virtue of (a) its concentrated market share, which is, upon information and belief, approximately eighty percent (80%); (b) its control in

separate and distinct relevant markets over the ROLM proprietary parts and software required by ISOs to service ROLM PBXs; and (c) barriers to ISO entry or expansion in the service relevant market created and enhanced by virtue of ROLM's parts and software policies.

Second Amended Complaint ¶ 133. Plaintiffs maintain that this conduct violates section two of the Sherman Act, 15 U.S.C. § 2.

The plaintiffs request, *inter alia*, the following relief:

(1) that the Court issue a declaratory judgment finding that Rolm violated section one of the Sherman Act through "illegal *per se* tying[ ] or unreasonable restraints of trade[ ] excluding and disadvantaging competition in the relevant market for service of Rolm PBXs" and/or that Rolm violated section two of the Sherman Act through its "unlawful maintenance of its monopoly power in the relevant market for service of ROLM PBXs ... and/or ... [through its] unlawful attempt to monopolize the relevant market for service of ROLM PBXs," Second Amended Complaint at 36–37;

(2) that the Court enjoin Rolm from "continuing their unlawful actions" as alleged in the Second Amended Complaint, Second Amended Complaint at 37; and

(3) that the Court award treble damages, *id.*

It appears from the Second Amended Complaint that each individual named plaintiff seeks damages as well as injunctive relief The proposed ISO Injunctive Class allegedly

---

11. Plaintiffs refer to "proprietary" parts for parts which Rolm controls because of the parts' incorporation of Rolm intellectual property *such as* patents, copyrights, trade secrets, or tooling. Because of the unique nature of these parts and the inability of third parties to make interchangeable or replacement parts, Rolm-manufactured parts are needed for the Rolm PBXs. This is also true for software which is used to upgrade a PBX or to modify, add or change ("MAC") the PBX configuration.

12. "Tying" software is defined in the Second Amended Complaint as "(a) ROLM reconfigura-

tion software; (b) upgrades of such software; (c) new releases of such software; (d) NANP software; (e) Phonemail interface software; and (f) source codes for operating system software and firmware schematics." Second Amended Complaint ¶ 124. NANP software is software required to accommodate revisions in the North American Numbering Plan which is "the plan under which telecommunications are routed to and from End Users in North America." *Id.* ¶ 14(h)(16). Plaintiffs allege that the software is "possibly copyrighted." *Id.* ¶ 14(h).

does not seek damages for its members. The End User class seeks both damages and injunctive relief.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed this antitrust case as a class action on July 7, 1994, in the United States District Court for the Eastern District of Texas.[13] The complaint was first amended on October 24, 1994. Rolm moved to dismiss the first amended complaint and, pursuant to Federal Rule of Civil Procedure 26 and Article Two of the Civil Justice and Expense and Delay Reduction Plan, notified the court that it would be serving counterclaims on all plaintiffs.[14] Plaintiff then moved for leave of court to file a second amended complaint. The judge entered a protective order preventing disclosure of confidential material except to designated persons and directed a filing procedure for documents to be filed with the court which were confidential or highly confidential.

During the initial stages of this litigation, Rolm moved to disqualify plaintiffs' counsel due to an alleged conflict of interest in the counsel's representation of both ISOs and End Users. The Texas judge initially stayed discovery in the case until he could decide the conflict of interest issue. On December 21, 1994, he denied the motion to disqualify counsel and dissolved the discovery stay. In March, 1994, Rolm moved the court to certify the conflict issue to the Fifth Circuit Court of Appeals for resolution under 28 U.S.C. § 1292(b).

Rolm additionally moved to transfer the case to this district pursuant to 28 U.S.C. § 1404(a) for convenience of the parties. RealCom is based within this district. The Texas judge found that RealCom, "[b]y its size and financial interests in this litigation, ... clearly dwarfs the interest of the other plaintiffs, particularly [DD] Hawkins, the only named plaintiff residing in this district, which has two employees." Order on Def.'s Mot. to Transfer Venue, No. 9:94–CV–145, at 5 (E.D.Tex. Feb. 24, 1995). For that reason, as well as the convenience of Atlanta as "a major transportation hub of the Southeast," he transferred the action to this district. The case was opened here on March 14, 1995. Pending motions were transferred with the case, including defendant's motion for certification for interlocutory appeal. The district judge then assigned to the case granted leave to plaintiffs to file the Second Amended Complaint and ordered that parties should proceed as if the case were newly filed as of the filing of the Second Amended Complaint. On May 19, 1995, the judge denied all pending motions without prejudice to renew any of the motions "should they become relevant and pertinent to the case as it develops." Order of the Ct., No. 1:95–CV–649–RLV (N.D.Ga. May 19, 1995). Thus, the slate was wiped clean, and the parties began this action anew.

Rolm fired the first shot of the current case with a motion to dismiss the Second Amended Complaint, and followed with a renewed motion to disqualify plaintiffs' counsel, and, if necessary, for an order of certification for interlocutory appeal pursuant to § 1292(b). Shortly thereafter, this action was transferred to the undersigned.

The Court held a status conference in this case on October 6, 1995. Subsequently, by order dated December 20, 1995, the Court denied the motion to disqualify plaintiffs' counsel and for certification for interlocutory appeal, and ruled on other pending motions. The Court, however, deferred ruling on the Motion for Class Certification until certain discovery regarding class certification issues could be completed.[15] Due to the continuation of class certification discovery, on March 26, 1996, the Court denied the Motion for Class Certification with leave to renew. That motion was renewed on May 21, 1996,

---

13. The original plaintiffs in this action did not include DD Hawkins, Start, CMS or Olde York Valley Inn. These parties were added by the first amended complaint.

14. Rolm previously had filed counterclaims against Telecom, RealCom, Nova and ATC.

15. "To make early class determination practicable and to best serve the ends of fairness and efficiency, courts may allow classwide discovery on the certification issue and postpone classwide discovery on the merits." *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570–71 (11th Cir.1992). The Court limited the time period for class certification discovery to 90 days.

at the close of the class certification phase of discovery.

The latest order of this Court was entered on July 1, 1996. That order granted in part and denied in part plaintiffs' motion to dismiss certain of defendant's counterclaims. Specifically, the Court dismissed, without prejudice, Counterclaim Counts One, Two, Three, Four, Nine, Ten, and Eleven against unnamed potential class members. The Court declined to dismiss Counterclaim Count One against the named plaintiffs as counterdefendants.[16]

## III.  PROCEDURAL MOTIONS

A.  *Parties' Joint Motion for Leave to File Corrected Joint Preliminary Statement and Scheduling Order*

The parties seek leave to file a corrected Joint Preliminary Planning Report and Scheduling Order to correct certain typographical errors and "inadvertent admissions." As part of the statement, the parties set forth discovery boundaries and time limits. The parties, however, leave blank those areas in which they disagree. Specifically, those areas are (1) whether Rolm should be allowed to add additional counterdefendants if the class is certified, and (2) how long discovery on the merits should be extended after the Court rules on the motion for class certification. The Court DEFERS ruling on those issues until after the motion for class certification has been decided. The Court has not signed the previous statement; therefore the motion for leave to submit the corrected copy is GRANTED.

B.  *Rolm's Motion for Leave to File Surreply in Opposition to Plaintiffs' Emergency Motion for Protective Order*

By order dated April 22, 1996, the Court denied plaintiffs' motion for protective order.

Therefore, this motion is DENIED as MOOT.

C.  *Plaintiffs' Motion to Strike Letter Communication to Court*

Plaintiffs move to strike a letter written to the undersigned by defendant's counsel, Charles E. Campbell, on April 22, 1996. The letter essentially invited the Court's attention to pending discovery motions and characterized plaintiffs as "resisting Rolm's class discovery efforts at every turn." Letter from Charles E. Campbell to the Honorable Willis B. Hunt, Jr., of Apr. 22, 1996, at 1.

■  There are instances when letter briefs are sanctioned or requested by the Court. In general practice, however, such letters are discouraged and in some cases prohibited by United States District Court for the Northern District of Georgia Local Rule ("LR") 215–2(b). Despite defendant's characterization of the letter as "a good faith attempt by Rolm to assist this Court in administering a large and complex case," it seeks to prod the Court into action, preferably in Rolm's favor.[17] Even if the Court assumes that the letter is an improper communication with the Court under LR 215–2(b), it is not docketed as part of the record in this case, and, thus, the motion is DENIED as MOOT.[18]

D.  *Rolm's Motion to Strike Plaintiffs' New Evidence Submitted with Reply Memorandum in Support of Motion for Class Certification, or, in the Alternative, to File Surreply*

As noted above, in March 1996, the Court denied plaintiffs' first motion for class certifi-

---

16.  Rolm counterclaims against the various named plaintiffs for a declaratory judgment that certain copyrights are valid and for relief from alleged copyright infringement, misappropriation, Lanham Act violations, trademark infringement, violations of the Georgia Unfair and Deceptive Trade Practices Act, breach of contract, tortious interference with contract and prospective business relations, conversion or trover, unjust enrichment, unfair competition, computer fraud, tampering, trespass, product disparage-

ment, for price and reasonable value of goods and services, quantum meruit, and for account stated. Not all counterclaims are alleged against all counterdefendants/named plaintiffs.

17.  Mr. Campbell noted for the Court that he "would appreciate prompt rulings."

18.  The Court has not considered the letter in deciding any motions in this case.

cation with leave to renew in light of the continuing class certification discovery. That order told plaintiffs that they "need not file another full brief in support of their motion; a short motion simply stating that the motion is renewed will be sufficient." Order of the Ct., No. 1:95–cv–0649–WBH, at 1 (N.D. Ga. filed Mar. 26, 1996). The Court made no mention of the filing of additional evidence. However, it is logical that if plaintiffs were to file additional evidence in support of class certification, then the memorandum in support of the motion for class certification would need to be revised.

■ Rather than revising the motion for class certification and/or the memorandum in support, plaintiffs instead attached fifty-five new exhibits to their reply to defendant's response to the motion for class certification. Some of those exhibits were available to plaintiffs at the time of renewing their motion for class certification; others were not. Without ascribing any motives to plaintiffs' reason for furnishing those documents for the first time with their reply brief (as suggested by defendant) and without assessing whether each exhibit addresses issues raised solely by Rolm's response to the class certification motion, the Court believes that the equities of this situation favor allowing Rolm to file a surreply to respond to the additional evidence. The Court thus DENIES defendant's motion to strike evidence submitted with plaintiffs' reply brief and GRANTS defendant's motion to file a surreply.

E. *Rolm's Motion for Leave to File Memorandum with Respect to New Developments Relevant to Plaintiffs' Motion for Class Certification*

Rolm moves the Court for leave to supplement, in effect, its memorandum in opposition to class certification. Rolm proposes to file an additional memorandum of law regarding the impact of plaintiff CMS's filing of court actions in Missouri state court against Rolm and against the Money Store, a former CMS service customer and current Rolm ser-

vice customer. The Money Store is a potential member of the proposed End User class as defined below.

■ Given that this litigation involves potential class members as well as a named plaintiff and the sole defendant, the Court GRANTS the motion for leave to file this supplemental brief. The plaintiffs' response also is accepted.

F. *Additional Procedural Matter*

As an additional procedural matter, the Court instructs the parties that no further violations of the Local Rules will be tolerated. The parties' neglect to follow the Local Rules, particularly regarding type-size and format (including footnotes), made resolution of the pending motions more difficult and added to the delay in reaching decisions on the pending motions.[19]

## IV. DISCOVERY MOTIONS

A. *Rolm's Motion to Compel Plaintiffs' Answers to Interrogatories Related to Class Discovery*

On April 12, 1996, Rolm moved to compel plaintiffs to answer properly served interrogatories pursuant to Federal Rule of Civil Procedure ("Rule") 37 and LR 2354. Rolm contends that plaintiffs failed to respond to properly served interrogatories within thirty days as prescribed by Rule 33(b)(3) and, thus, have waived all objections under Rule 33(b)(4).

By Order of the Court dated December 20, 1995, the Court set the following parameters for class certification discovery and merits discovery: "[a]s provided in the Local Rules, discovery shall commence thirty [30] days after the defendant answers the complaint. An initial discovery period of ninety [90] days shall be confined to the issues relevant to class certification." Order of the Ct., No. 1:95–CV–0649–WBH, at 8 (N.D.Ga. Dec. 20, 1995). Defendant answered the Second Amended Complaint on January 18, 1996. The initial class certification discovery period

---

19. The type-size of Rolm's footnotes is so small that the text was difficult to read, particularly where Rolm included substantive arguments and evidence in an effort to not exceed the sixty-five page limit for their Response to the Motion for Class Certification that they, albeit with the Court's approval, set for themselves.

of ninety days commenced on February 20, 1996.[20] The beginning of merits discovery, although not delayed explicitly by the Court, has been postponed by the parties pending resolution of the motion for class certification.

Defendant first served the interrogatories on February 12, 1996. Rolm contends that plaintiffs' position that the interrogatories should be deemed served on February 20, 1996, is untenable for two reasons: (1) Rule 33(a) authorizes service of interrogatories anytime after parties hold a discovery conference, and (2) plaintiffs' counsel (Kellogg, Huber, Hansen, Todd & Evans, P.L.C.) suggested that "document requests be served on or after Monday, February 12" and that the "new requests could be deemed served on that date." Letter from Austin C. Schlick to Kenneth A. Gallo (Howrey & Simon) of Feb. 9, 1996, at 1. The Court addresses first whether Rolm's interrogatories should be deemed served or propounded, for purposes of calculating timely answers thereto, on February 12th or February 20th.

Rolm's position essentially is that Rule 33(a) through reference to Rule 26(d) supersedes this Court's Order regarding discovery. Rule 33(a) provides in pertinent part, "[w]ithout leave of court or written stipulation, interrogatories may not be served before the time specified in Rule 26(d)." Rule 26(d) states, "[e]xcept when authorized under these rules or by local rule, order, or agreement of parties, a party may not seek discovery from any source before the parties have met and conferred as required by subdivision (f)." Rule 26(f) and LR 235–2 require a discovery planning conference. Defendant argues that, because the discovery conference was held on February 1, 1996, it was authorized to begin discovery after that point.

■ The Court has discretion over the exercise of discovery. *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir.1993); *American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1578 (11th Cir.1985). The Court ordered that discovery not begin until thirty days after the defendant's answer, as provided for in the

Local Rules. Nothing in Rule 33(a) or Rule 26(d) withdraws that discretion; neither Rule 33(a) or Rule 26(d) authorized Rolm to jumpstart discovery prior to the time set by the Court and the Local Rules. The plaintiffs did not err in deeming the interrogatories served on February 20th, thirty days after the "beginning" of discovery.

Rolm's second argument is that plaintiffs suggested that they deem the interrogatories served on February 12th. However, that argument is meritless in light of the specific reference to only "document requests" in the letter by plaintiffs' counsel attached as an exhibit to Rolm's motion. The Court therefore concludes that plaintiffs have not waived any objections automatically due to operation of Rule 33(b)(4), and the Court considers Rolm's motion to compel answers to interrogatories over plaintiffs' objections.

Plaintiffs first assert a blanket objection to Rolm's interrogatories on the basis that the number of interrogatories propounded exceeds the limit of forty set by LR 225–2. As Rolm notes, by Order dated May 5, 1995, Judge Vining wiped the slate clean in this case to begin anew. And, as the Court stated in its Order filed April 22, 1996, that includes all discovery previously engaged in while the case was pending in the Eastern District of Texas. Thus, plaintiffs' argument is meritless.

In the alternative, plaintiffs implicitly argue that the interrogatories (seven out of eight sets) propounded to the individual plaintiffs in February, 1996, themselves exceed the limit set by LR 225–2. The Court, in a limited sample, counted the interrogatories, including subparts, and found that they did not exceed LR 225–2's limitations. Accordingly, the Court overrules plaintiffs' objections on these grounds.

■ Plaintiff also objected to the interrogatories because they were of the opinion that the interrogatories sought information regarding the merits of the case rather than class certification. Regardless of the merits of this objection and Rolm's concomitant re-

---

**20.** The thirty day period ended on a Saturday; therefore, discovery actually commenced the next business day which, due to a federal holiday on February 19, 1996, was February 20, 1996.

quest to compel, the Court is prepared to rule on the motion for class certification without this additional material; substantial evidence has been submitted by both parties. As noted, the Court has discretionary control over discovery. Even if Rolm were somehow entitled to the material requested, the Court may truncate or limit discovery for class certification issues. Because under Rule 23 the Court may revisit the issue of class certification, denial of the motions to compel will not injure the moving party, in this case the defendant. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Hudson v. Delta Air Lines. Inc.*, 90 F.3d 451, 458 (11th Cir.1996) (per curiam). Accordingly, this motion and all other pending discovery motions which relate to class certification discovery are DENIED.[21] All requests for sanctions are DENIED.

### B. *Plaintiffs' Motion for Pretrial Order*

■ Plaintiffs moved for a pretrial scheduling order by the Court directing the parties to begin merits discovery in August 1996 and bifurcating this litigation into two segments: one for antitrust liability and one for Rolm's counterclaims and individual lost profit claims of the named plaintiff ISOs. As noted by the defendants, the Parties' Joint Preliminary Planning Report and Scheduling Order remains unsigned and incomplete. The issues raised in plaintiffs' motion should have been raised in the joint preliminary planning report. Therefore, the Court DENIES the motion for pretrial order.

## V. MOTION FOR CLASS CERTIFICATION

Plaintiffs move to certify two classes in this litigation. The first is the "ISO Injunctive Class," which is "comprised of all persons in the United States that, between July 7, 1990 and the present, have been actual or potential competitors of ROLM for the sale of service of ROLM PBXs." The second is the "End User Service Class" which consists of "all persons in the United States that, between July 7, 1990 and the present, who [sic] have purchased service directly from ROLM for ROLM PBXs." The ISO Injunctive Class includes both third-party service providers and those Rolm PBX operators who self-service their PBXs. Only the End User class seeks damages.[22]

The Court may certify all or part of a case as a class action only if each of the requirements of Federal Rule of Civil Procedure 23(a) are met, and at least one of the standards of Rule 23(b) is also met for each proposed class. Rule 23(a) provides that

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a) (bold added). Only if all of the requirements of Rule 23(a) are met will the Court then consider whether one of the standards of Rule 23(b) is also met for each proposed class.

The merits of the plaintiffs' Sherman Act claims are not before the Court at this time. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). Yet, in addressing the certification question, the Court is aware that the plaintiffs bear the burden of demonstrating that the prerequisites of Rule 23 are met. *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir.1984). Because certification of a class is "an *exception* to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442 U.S. 682, 700–701,99 S.Ct. 2545, 2557–58, 61 L.Ed.2d 176 (1979) (emphasis added), the Court engages in a "rigorous

---

21. The Court notes that plaintiffs' motion for protective order also is moot and could be denied on that basis.

22. As noted above, it is construed from the Second Amended Complaint that the ISO named plaintiffs are seeking damages individually outside of the class claims.

analysis" of the requirements of Rule 23(a), *Gilchrist*, 733 F.2d at 1555.

Because "there are no hard and fast rules which have developed regarding the suitability of a particular type of antitrust case for class action treatment," *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 316 (5th Cir. 1978), the analysis often mandates that the Court look to the law and facts which comprise the plaintiffs' class action claims, *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). This means ensuring through information submitted outside of the pleadings that the requirements of Rule 23 are met, not whether plaintiffs' claims are viable. *See General Tel. Co. of Southwest*, 457 U.S. at 160, 102 S.Ct. at 2372; *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 457 (11th Cir.1996) (per curiam); *see also Morrison v. Booth*, 763 F.2d 1366, 1370 (11th Cir.1985) ("[W]hile plaintiffs need not prove the merits of their claims at this stage, they must provide more than bare allegations that they satisfy the requirements of Rule 23 for class certification."). Because defendant's challenges to class certification differ between the two proposed classes, the Court analyzes separately whether the requirements of Rule 23 have been met for each class.

## A. *ISO Injunctive Class*

Plaintiffs propose an ISO Injunctive Class to be certified under Rule 23(a) and 23(b)(2) that consists of "all person in the United States that, between July 7, 1990 and the present, have been actual or potential competitors of ROLM for the sale of service of ROLM PBXs." The ISO Injunctive Class includes actual competitors of Rolm—the named representatives being Telecomm, RealCom, Nova, CMS and ATC—the current business of which includes servicing Rolm PBXs; and potential competitors of Rolm in the form of self-service[23] companies such as Start who in the past have serviced Rolm PBXs as a third-party ISO and which potentially could service ISOs again.

Rolm raises four primary issues why this class should not be certified: (1) the interests of the prospective class members conflict; therefore, the requirements of Rule 23(a)(4) are not met; (2) Rolm's counterclaims prevent the plaintiffs from being adequate representatives under Rule 23(a)(4) and make individual issues predominate over common issues as well as make management of this action as a class virtually impossible; (3) the plaintiffs have not established that Rolm has acted or refused to act on grounds generally applicable to the class as required by Rule 23(b)(2); and (4) the proposed class is not drawn precisely.

The Court addresses the Rule 23(a) issues first, including those not challenged specifically by Rolm, because regardless of the defendant's challenges, the plaintiffs still must demonstrate to the Court that certification as a class action is desirable and proper. *Nelson v. United States Steel Corp.*, 709 F.2d 675, 679–80 (11th Cir.1983); *Satterwhite v. City of Greenville*, 557 F.2d 414, 419 (5th Cir.1977) ("Independent of the efforts of the parties, [the judge] must satisfy himself of the class nature of the suit, at least when the parties have placed the issue in question."). *Cf. Bieneman v. City of Chicago*, 838 F.2d 962, 963 (7th Cir.1988) (per curiam) ("If a complaint includes a class allegation, [then] the district court *mug* address it, no matter what the parties later do.").

### 1. Rule 23(a)(1)

█ Generally known as the "numerosity" requirement, this subsection requires plaintiffs to show that joinder of all possible plaintiffs is not practical because of their geographic dispersity, their number, and the difficulty that may be incurred by trying to identify and join them. *Kilgo v. Bowman Transp.*, 789 F.2d 859, 878 (11th Cir.1986). Plaintiffs show that there may be 875 members of the proposed ISO class. Decl. of Richard A. Kuehn ¶ 11.[24] These possible class members are geographically dispersed

---

**23.** Self-service or self-maintenance companies are those companies which have a person within their business organization who services and maintains the PBXs without hiring outside assistance from either Rolm or a third-party ISO.

**24.** Kuehn is president of RAK Associates, a telecommunications consulting firm headquartered in Cleveland, Ohio.

and not identified easily. Therefore, Rule 23(a)(1) is satisfied.

### 2. Rule 23(a)(2)

■ This second requirement of Rule 23(a) frequently is referred to as "commonality," meaning that there must be some questions of law or fact common to all members of the proposed class. *Davis v. Northside Realty Assocs,. Inc.*, 95 F.R.D. 39, 43 (N.D.Ga.1982). An issue common to all members of the proposed ISO class is whether Rolm's policies prohibit them from purchasing Rolm proprietary parts directly from Rolm.[25] Thus, this burden is satisfied.

### 3. Rule 23(a)(3)

■ The "typicality" criterion focuses upon whether the " 'named representative['s] claims have the same essential characteristics as the claims of the class at large.' " *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985) (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)).

> A sufficient nexus is established if the claims or defenses of the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984). The named plaintiffs sufficiently allege anticompetitive conduct by Rolm that would be typical of all potential class members. Thus, the Court concludes that Rule 23(a)(3) is satisfied as to the ISO Injunctive Class.

### 4. Rule 23(a)(4)

■ "The adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the litigation, *and* of whether plaintiffs have interests antagonistic to those of the rest of the class." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir.1985) (emphasis added). There is no general standard for a district court to apply when determining adequacy of class representation. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727–28 (11th Cir.1987). Antagonistic interests are not only those which directly oppose one another, but also are those which may be hostile to one another or unharmonious such that one party's interest may be sacrificed for another's. *See Albertson's, Inc. v. Amalgamated Sugar Co.*, 62 F.R.D. 43, 54 (D.Utah 1973) ("[T]he representative party must have no interest which is antagonistic to the class, but rather have interests wholly compatible with them."), *affd. in relevant part*, 503 F.2d 459 (10th Cir.1974). *But see In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 208 (5th Cir. Apr.1981).[26]

Rolm contends that the named ISO plaintiffs cannot be found to protect the interests of the absent class members adequately because several of the named plaintiffs derive substantial income from the sale of used and reconditioned parts to Rolm PBX users. Rolm asserts that these third-party ISOs which sell used or reconditioned parts[27] for their business cannot represent either self-service ISOs or third-party ISOs which do not sell used or reconditioned parts. Rolm reasons that "*if* Rolm engages in the alleged restrictive parts practices, and if Rolm were

---

**25.** While Rolm implicitly concedes this point, as noted, it does challenge whether common issues predominate. The Court does not address the merit of that argument here.

**26.** In the context of a settlement approval, the Fifth Circuit Court of Appeals found that " 'so long as all class members are united in asserting a common right, such as achieving maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.' " *In re Corrugated Container Antitrust*

*Litigation*, 643 F.2d 195, 208 (5th Cir.1981) (quoting *In re Corrugated Container Antitrust Litigation*, 1980–1 Trade Reg. Rep. (CCH) ¶ 63,163 at 77,788 n. 10 (S.D.Tex.1979)). This situation is distinguishable because it is not the maximum amount of recovery being sought, but rather the ultimate competitive benefits if the recovery sought is granted.

**27.** This apparently does not apply to software, which Rolm continues to control exclusively.

ordered to abandon those practices, [then] Rolm's economically-predictable [sic] response would be to raise prices for new parts, because the antitrust laws permit Rolm to set any price it wants on its patented or copyrighted products." Def.'s Mem. in Opp'n to Pls.' Mot. for Class Certification at 57 (emphasis added). Thus, Rolm argues, the prices for reconditioned parts would rise, benefitting the sellers of reconditioned parts. The other ISOs, including self-service organizations, would be injured because they would pay higher prices for all parts they needed regardless of whether the parts were new, reconditioned, or used. Rolm's theory is that if plaintiffs are successful on their antitrust claims and it has to release its market control on the tied product, service, (by providing access to the tying product, parts) then it will raise prices on the tying product, parts. Such a price increase will benefit only the ISOs who sell used parts. *See generally Kypta v. McDonald's, Corp.*, 671 F.2d 1282, 1286 (11th Cir.1982). Of course, all ISOs would benefit somewhat by having access to the new parts that previously were unavailable or by having the option to buy new parts rather than merely used or reconditioned parts. Plaintiffs reply that "[b]eing purely conjectural ... Rolm's alleged conflict could not defeat class certification." Pls.' Reply Mem. in Supp. of Mot. for Class Certification at 28 (citing *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir.1975)).[28]

The plaintiffs' brief response does not take into consideration that plaintiffs bear the burden of proof on this issue just like all other issues raised in connection with the motion for class certification. In challenging the representatives' adequacy, the defendant "does not have to show *actual* antagonistic interests; the potentiality is enough." *Plekowski v. Ralston Purina Co.*, 68 F.R.D. 443, 452 (M.D.Ga.1975) (emphasis added); *see also Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.*, 162 F.R.D. 482, 486 (E.D.Pa.1995); *Cutler v. Lewiston Daily*

*Sun*, 611 F.Supp. 746, 756 (D.Me.1985). Of course, this does not mean that to prevent class certification the defendant may raise meritless arguments regarding far-fetched scenarios. But this is not that situation.

Here, defendant has raised a substantial issue which has not been rebutted by plaintiffs: whether the ISOs who engage in the used parts business would benefit at the expense of other members of the class if they are successful on the merits of the antitrust claims (such that class certification is improper). The ISOs that sell used parts would receive a premium price on the used parts because of the increased price of new parts bringing up the price of all parts in the market. These ISOs would benefit from the relief sought in this action. The third-party ISOs that do not sell used parts will have to pay higher prices for both new and used parts purchased either from Rolm or from a used parts dealer. However, this third-party ISO may pass the cost directly through to the End User and not suffer a direct loss as a result of the increased prices. The self-service ISOs will have to pay higher prices for parts regardless of whether they purchase their parts directly from Rolm or from a used parts dealer. Self-service ISOs will not be able to pass the cost *directly* on to another entity and will incur higher costs of using Rolm PBXs as a result. The Court concludes that this scheme favors ISOs that sell used parts at the expense of self-service ISOs.

"In the ordinary instance every class member has been adversely affected by the tying arrangement and each individual has the same interest in having it declared illegal." *Albertson's*, 62 F.R.D. at 52. However, in the ISO class framed by the plaintiffs, not all prospective members have the same interest, and the interests are conceivably antagonistic. Plaintiffs have raised no evidence or argument that persuades the Court that the increased price of parts will not create antagonistic interests within the proposed class.

28. Plaintiffs direct their primary argument against Rolm's allegations of inter-class conflict between the End User class and the ISO Injunctive Class. The intra-class conflict must be considered separately from claims of inter-class conflict. Additionally, Rolm raises for the third time its allegations that plaintiffs' counsel should be disqualified because of alleged inter-class conflicts. The issue of the counsel's disqualification has been decided already in this case—twice. The Court will not resurrect that issue for a third time.

Hence, class certification is not proper for failure to meet the adequacy criterion of Rule 23(a)(4). *See Id.* at 53–54. *Cf.* Herbert B. Newberg & Alba Conte, 4 Newberg § 18.14 (3d ed. 1992) ("Conflicts which have resulted in a finding of inadequacy include competition between class members. . . .").[29]

The price of parts also raises issues of inter-class conflict between the ISOs and the End Users, but because the Court DENIES class certification on the ISO Injunctive Class, all inter-class conflict issues are now moot.[30]

## B. *End User Service Class*

### 1. Rule 23(a)(1)

█ Plaintiffs show through submission of evidence that there are over 6,400 entities operating Rolm PBXs in 1992 which is within the class period proposed. Plaintiffs therefore have met the numerosity requirement.

### 2. Rule 23(a)(2)

Plaintiffs carry their burden with respect to commonality. They have shown that some common issues exist with respect to Rolm's policies on software and parts distribution. Rolm's primary contention is that the End User class representatives cannot show that these common issues predominate over individual issues as mandated by Rule 23(b)(3). Because the End Users seek class certification under that subsection, the Court addresses Rolm's arguments in that regard separately.

### 3. Rule 23(a)(3)

█ Rolm challenges plaintiffs' contentions that the claims of the named End User plaintiffs are typical of the prospective class members. Rolm maintains that the claims are not typical because none of the three

named End User plaintiffs—Olde York Valley Inn, RealCom, and Start—currently purchases or uses Rolm-provided service. The class, however, is defined so that these three named plaintiffs are included even though they do not continue to use Rolm-provided service. Each alleges use of Rolm-provided service during the class period. Therefore, Rolm's objections are without merit.[31]

### 4. Rule 23(a)(4)

Rolm challenges the named plaintiffs' adequacy of representation on the basis that plaintiffs' proposed damages methodology may leave some plaintiffs without recovery of any monetary award. These proposed class members are those who have not been overcharged by Rolm for service, but who endured lower-quality service. The record shows that the plaintiffs' expert, Dr. Roger Noll, has not ascertained a method for quantifying damages despite the existence of an impact or injury in the form of lower quality service in the absence of competition. Rolm argues that plaintiffs' willingness to include these entities in the class, despite the fact that the entities may be losing any possible monetary recovery, demonstrates their inadequacy of representation.

█ Plaintiffs counter that the mere possibility of an entity within the class that did not suffer monetary damages does not amount to antagonistic interests. Unlike in the situation of the proposed ISO Injunctive Class, all parties will seek to maximize the recovery by setting the benchmark price (the competitive price which would have been charged absent Rolm's anticompetitive conduct) as low as possible. Rolm's argument leads to the absurd result that *all* members' interests are antagonistic to one another because no entity would want the benchmark price to be the price that they paid for a

---

**29.** The Court is aware that this debate affects primarily Count I rather than all three Counts. However, because these claims, particularly Counts I and III are inextricably tied, denial of certification as to all three counts appears proper to the Court. Moreover, plaintiffs have not requested certification as to only part of the claims if certification is not proper for all claims.

**30.** Therefore, the Court need not address Rolm's contentions regarding inter-class conflict due to

CMS's law suit against The Money Store as it alleged in its memorandum with respect to new developments.

**31.** Rolm alleges additional facts in footnote 76 of its memorandum response which it contends relate to this argument. These factual contentions may relate to their adequacy of representation, but they do not support the contention that they are atypical of potential class members.

particular service or service agreement. Therefore, the Court will not deny class certification on this ground.

### 5. Rule 23(b)

■ The End User class seeks to be certified pursuant to both Rule 23(b)(2) and 23(b)(3). Because Rolm raises numerous issues regarding the proposed Rule 23(b)(3) certification for the End Users Damages class, the Court addresses that first.[32] In addition to proving that a class action is the superior method of proceeding, to satisfy Rule 23(b)(3), plaintiffs must show that common questions will predominate over individual issues as to the questions of antitrust liability. "[T]o make the findings required to certify a class action under Rule 23(b)(3) (that common issues predominate, etc.), one must initially identify the substantive law issues which will control the outcome of the litigation." *Alabama v. Blue Bird Body Co.,* 573 F.2d 309, 316 (5th Cir.1978) (price-fixing case).

■ The elements of proof that End User plaintiffs will have to show to succeed on their illegal tying claims are:

(1) two separate products, the tying product and the tied product;

(2) sufficient market power in the tying market to coerce purchase of the tied product;

(3) involvement of a not insubstantial amount of interstate commerce in the tied market; and

(4) anticompetitive effects in the tied market.

*Bob Maxfield, Inc. v. American Motors Corp.,* 637 F.2d 1033, 1037 (5th Cir. Unit A Feb.1981) (citing *Driskill v. Dallas Cowboys Football Club, Inc.,* 498 F.2d 321, 323 (5th Cir.1974)).[33]

Rolm argues, *inter alia,* that individual questions of proof will predominate over common questions of proof with respect to

whether Rolm had *sufficient market power in the tying market to coerce purchase of the tied product.* Plaintiffs allege that there are generally two tying products: parts and software. For each product, there are *multiple* relevant markets depending on the specific part or software identified. The Second Amended Complaint defines the "Relevant Parts and Software Markets" as follows:

37. ROLM also competes in relevant parts markets for the sale of proprietary parts made for use with ROLM PBXs. These relevant parts markets are distinct and separate from the relevant service market for ROLM PBXs. The geographic scope of competition in these relevant parts markets (their relevant geographic markets) is world-wide. New proprietary parts are typically only available from ROLM.

38. A part designed by ROLM to perform a certain function in a ROLM PBX is typically not interchangeable in use with another part designed for use in a ROLM PBX because it serves a different function. Nor is the part typically interchangeable in use with a part serving the same function in another manufacturer's PBX (*e.g.,* one of AT & T) because the ROLM part is designed for use only in ROLM's proprietary PBX system.

39. As a consequence, there are *a number of separate relevant product markets for the sale of parts* for ROLM PBXs ("relevant markets for ROLM parts"). Where the part is a ROLM proprietary part, ROLM dominates the supply of that part in the relevant markets ("relevant markets for ROLM proprietary parts").

40. In addition, ROLM licenses or sells to End Users ROLM proprietary software in distinct and separate software relevant markets ("relevant markets for ROLM proprietary software"). Typically ROLM

**32.** The Court notes that only one of these subsections need be satisfied for the Court to certify the class.

**33.** The Second Circuit Court of Appeals adds a fifth question of proof is there "evidence of *actual* coercion by the seller that *in fact* forced the buyer to accept the tied product"? *Yentsch v. Texaco, Inc.,* 630 F.2d 46, 56–57 (2d Cir.1980) (emphasis added).

is the only supplier of this software in these relevant markets.

Second Amended Complaint ¶¶ 37–40.

In their Motion for Class Certification, plaintiffs maintain that the definitions of these multiple markets results in common proof which will predominate over individual issues. Plaintiffs first cite *Image Technical Servs., Inc. v. Eastman Kodak Co.*, No. C 87–1686 BAC, 1994 WL 508735, 1994 U.S. Dist. LEXIS 12652, at \*7 (N.D.Cal. Aug. 31, 1994). In *Image Technical Servs.*, the district court rejected the defendant's argument that the element of coercion, by its nature, was subject to individualized proof. The Court relied on Ninth Circuit authority that held *"coercion* could be implied from proof that 'an appreciable number of buyers have accepted burdensome terms, such as a tie-in, and there exists sufficient economic power in the tying product market.'" *Id.* (emphasis added) (quoting *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1217 (9th Cir.1977)). In the second case that plaintiffs cite, *R & D Business Systems. Inc. v. Xerox Corp.*, NO. 2:92CV042, mem. order at 19 (E.D.Tex. Feb. 23, 1993), the district court held that "[b]ased on the evidence in the record, the Court is persuaded that proof of *impact* as to each member ... can be made in a generalized manner," and that common issues predominated. *Id.* (emphasis added).

These two cases are distinguished easily from the issue raised here by Rolm. The Court is addressing the definition of *relevant markets*. Even though there is no challenge to the *existence* of "relevant parts markets" or "relevant software markets," the Court at this time has no indication of what will be the limits of those markets. It is clear, however, that there are going to be highly specialized questions regarding the definition of particular markets. The parameters of the numerous undefined markets will depend on a variety of factors, including, the part the End

User sought to purchase, the time period in which the End User either purchased or tried to purchase the part, and whether Rolm had copyright or patent protection on the product. Only after the markets are defined adequately will plaintiffs then be able to prove Rolm's market power in the proposed markets and whether that market power was sufficient to coerce End Users to purchase Rolm-provided service. Again, because of the undefined nature of the markets, this proof will require highly individualized evidence from the End Users.

This extremely detailed type of inquiry not only convinces the Court that individual questions would predominate over common questions, but that the case would not be manageable as a class action.[34] Under Rule 23(b)(3), plaintiffs have to demonstrate that both elements will be met. Based on the reasons above, the Court cannot conclude that the class action is the superior method of proceeding. Thus, the Court will not certify the End User Damages class.[35] *See* Rule 23(b)(3)(D).

End Users also seek to be certified as a class pursuant to Rule 23(b)(2) for injunctive relief sought. Plaintiffs allege that certification under this rule is proper because "ROLM has acted, or refused to act, on grounds generally applicable to the End User Service Class, thereby making appropriate final injunctive relief, or corresponding declaratory relief, for the class as a whole." Second Amended Complaint ¶ 25. Relief is sought under all three counts of the Second Amended Complaint. After reviewing the parties' limited discussion of Rule 23(b)(2) certification as to the End User class, the Court is not convinced at this time that injunctive relief against Rolm as sought by the End User class would be based on acts by Rolm that were "generally applicable" to the End User class. The End Users, by failing to identify how this requirement is satisfied[36], have not carried their burden of proof on this

---

34. This applies as well to Count III claims of monopolization and attempted monopolization.

35. Therefore, even though plaintiffs have submitted some evidence of general policies regarding distribution of parts and software, the evidence submitted does not carry plaintiffs' burden of proof that common proof can be used to demonstrate Rolm's market *power* in each of the "relevant" markets.

36. Although Rule 23(b)(2) certifications do not require an analysis of whether individual issues will "predominate", the Court must determine whether the proof of their claims will rest on Rolm's acting in a manner that is "generally

issue. Accordingly, the Court will not certify a class action for the proposed End Users class as a Rule 23(b)(2) class.

## V. CONCLUSION

In summary, the Court

• DENIES as MOOT defendant's Motion for Leave to File Surreply in Opposition to Plaintiffs' Emergency Motion for Protective Order to prohibit defendant from communicating with absent class members [178–1] and plaintiffs' Motion to Strike Letter Communication to the Court [189];

• DENIES plaintiffs' Motion for Protective Order [190–1]; plaintiffs' Motion for Pretrial Order [221–1]; defendant's Motion to Compel Answers to Interrogatories Related to Class Discovery [183–1]; defendant's Motion to Compel Production of Documents Relating to Class Certification [187–1]; defendant's Motion to Compel Answers defendant's Answers to Deposition Questions [197–1]; defendant's Second Motion to Compel Production of Documents Relating to Class Certification [199–1 ]; defendant's Third Motion to Compel Production of Documents Relating to Class Certification [205–1]; defendant's Motion to Compel Answers to Deposition Questions by Richard A. Kuehn [206–1]; defendant's Motion to Strike Plaintiffs' New Evidence Submitted with Reply Memorandum in Support of Motion for Class Certification [222–1]; and plaintiff's Motion for Class Certification [200–1]; as well as all requests for sanction, and

• GRANTS defendant's Motion to File Surreply Brief [222–2]; defendant's Motion for Leave to File Memorandum with Respect to New Developments Relevant to Plaintiffs' Motion for Class Certification [231–1]; and parties' Joint Motion for Leave to File Corrected Copy of the Joint Preliminary Planning Report and Scheduling Order [176–1].

• The Clerk is DIRECTED to file the surreply which is attached to Rolm's Motion to File Surreply Brief [222–2], defendant's Memorandum with Respect to New Developments Relevant to Plaintiffs' Motion for Class Certification [231–1], and the parties' Corrected Copy of the Joint Preliminary Planning Report and Scheduling Order [176–1], as of the date of this Order.

The Court has reviewed the parties' positions with respect to the length of the merits discovery period.[37] Because the Court has denied class certification, the Court is not of the opinion that the merits discovery period needs to remain open for a year as proposed by Rolm, despite its counterclaims. The merits discovery period will commence thirty days after the date of this Order and will expire on September 15, 1997.

---

applicable" to all End User class members. Rolm does not challenge any aspect of certification of an End User injunctive class specifically but incorporates their arguments with the Rule 23(b)(3) arguments. As a result, the plaintiffs simply rely on their motion for class certification. *See* Pls.' Reply Mem. in Supp. of Class Certification at 27 ("Rolm does not dispute that the End User Service Class satisfies each of[rule 23(b)(2)'s] requirements."). The Court cannot read Rolm's memorandum as narrowly as plaintiffs do. Rolm clearly challenges the existence of a uniform or nationwide policy which in turn relates to whether Rolm acted on a basis "gener-

ally applicable" to the proposed class. *See* Def's Mem. in Opp'n to Pls.' Mot. for Class Certification at 14 ("Plaintiffs could prevail only by presenting proof of a multitude of individual instances on which Rolm refused to sell parts.").

**37.** The parties identified two issues on which they could not reach agreement: (1) whether Rolm should be allowed to add additional counterdefendants if the class is certified, and (2) the length of the discovery period. The first issue is now moot.