**In re MILLER INDUSTRIES, INC. SECURITIES LITIGATION.**

**Civ.A. No. 1:97–CV–2811–TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 27, 1999.

Todd S. Collins, phv, Nicholas J. Guiliano, phv, Berger & Montague, Philadelphia, PA, Martin D. Chitwood, Christi Cannon Mobley, Chitwood & Harley, Atlanta, GA, Kurt Olsen, phv, The Olsen Law Firm, Washington, DC, for Manuel Vela on behalf of himself and all others similarly situated.

Peter Quirt Bassett, Oscar N. Persons, Rebecca McLemore Lamberth, John Allen Jordak, Jr., John E. Goselin, II, Jenna Lynne Fruechtenicht, Alton & Bird, Atlanta, GA, for Miller Industries, Inc.

Oscar N. Persons, Rebecca McLemore Lamberth, John Allen Jordak, Jr., John E. Gselin, II, Jenna Lynne Fruechtenicht, Alton & Bird, Atlanta, GA, for William G. Miller, Jeffrey I. Badgley, Frank Madonia, H. Patrick Mullen, L. Stanley Neeley, Daniel H. Sebastian and Richard H. Roberts.

Martin D. Chitwood, Christi Cannon Mobley, Chitwood & Harley, Atlanta, GA, for Stephen Clark, Erich R. Swett, Ray Schreiber and Hollis W. Ritchie.

---

### ORDER

THRASH, District Judge.

This is a complex securities fraud case. It is before the Court on the Plaintiffs' Motion for Class Certification [Doc. 45]. On May 10, 1999, the Court heard oral argument as to the class certification motion. For the reasons set forth below, the motion should be granted. The Defendants' arguments concerning intra-class conflict are interesting intellectually, but are insufficient to defeat class certification given the overwhelming weight of pertinent and persuasive authority in this area.

### I. BACKGROUND

The Plaintiffs filed this consolidated shareholder action asserting various securities fraud claims against (1) Miller Industries, Inc.; (2) William G. Miller, Chairman of the Board of Directors and Co–Chief Executive Officer of Miller Industries; (3) Jeffrey I. Badgley, President, Co–Chief Executive Officer, and a member of the Board; (4) Frank Madonia, Vice–President, Secretary and General Counsel; (5) H. Patrick Mullen, Director; (6) L. Stanley Neely, Vice–President, President of Miller Industries' Financial Services Group; (7) Daniel N. Sebastian, Director; and (8) Richard H. Roberts, Director. The Plaintiffs consist of members of a potential class who purchased Miller Industries' common stock during the class period between November 6, 1996, through September 11, 1997.

Miller Industries is a Tennessee corporation with its principal place of business being located in Norcross, Georgia. It is in the business of providing vehicle towing and recovery equipment systems and services. Since 1990, Miller Industries has grown principally by acquiring towing equipment manufacturers, distributors and towing services companies. Miller Industries markets its towing services under the RoadOne brand name. It manufactures and distributes towing and recovery equipment under various brand names.

This securities fraud case is based primarily upon Defendants' alleged misrepresentations and omissions made in various public statements during the class period. The alleged misrepresentations and omissions related, directly or indirectly, to the rate of expected earnings growth at Miller Industries. The Plaintiffs purchased Miller Industries common stock during the class period. They allege that the price of Miller Industries' common stock was inflated during this period because of these alleged misrepresentations and omissions, and that they purchased their shares at these inflated prices. The Plaintiffs allege that on September 12, 1997, the Defendants disclosed the results of operations for the quarterly period ending July 31, 1997. These quarterly results revealed that the rate of growth in earnings had slowed significantly to only seven per-

cent, much lower than the securities markets were expecting. The Plaintiffs allege that the price of Miller Industries' common stock fell more than 30 percent on September 12, 1997, causing them to incur significant financial losses. Based on these allegations, Plaintiffs assert that each Defendant knowingly and recklessly violated Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated by the Securities Exchange Commission pursuant to Section 10(b). The Plaintiffs further assert that the individual Defendants are liable under section 20(a) of the Securities Exchange Act as control persons by virtue of their executive positions and knowledge of Miller Industries' businesses and operations.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiffs seek an order certifying this action as a class action with respect to the following class:

> [A]ll persons who purchased the common stock of Miller [Industries'] during the period of November 6, 1996 through September 11, 1997, inclusive. Excluded from the Class are [D]efendants herein, members of their immediate families, officers and directors of Miller [Industries], any entity in which any [D]efendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party.

(Doc. 19, Amended Complaint at ¶ 21). During the Class Period, more than 42.5 million shares of Miller Industries stock were issued and outstanding. The exact number of potential class members is not known to Plaintiffs at this time, but it is estimated to be several thousand. The Plaintiffs claim to be similarly situated with the class they propose to represent in that they claim they have purchased Miller Industries stock at prices inflated as a result of misrepresentations made by the Defendants in the company's public filings, public statements and press releases.

In a previous order, the Court granted in part and denied in part the Defendants' Motion to Dismiss the Amended Complaint [Doc. 37]. The Court appointed the following five Plaintiffs to serve as lead Plaintiffs in this case: (1) Manuel Vela; (2) Stephen Clark; (3) Erich R. Swett; (4) Ray Schreiber; and (5) Hollis Richie. Each Plaintiff purchased shares of Miller Industries common stock during the Class Period. The lead Plaintiffs have suffered losses ranging from approximately $627 to over $226,000 for collective losses of approximately $230,000. They seek to represent a class of thousands of investors who they claim have been damaged to the extent of millions of dollars by the Defendants' fraudulent conduct. In their Motion for Class Certification [Doc. 45], the Plaintiffs contend that the proposed class in this securities fraud case satisfies both the requirements of Rule 23(a) (numerosity, commonality, typicality and adequacy) and Rule 23(b)(3) (predominance and superiority).

## II. DISCUSSION

### A. STANDARDS FOR CLASS CERTIFICATION UNDER RULE 23

To maintain this case as a class action, the Plaintiffs must satisfy the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *See In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 683 (N.D.Ga.1991). Rule 23(a) sets forth the four prerequisites to maintain any claim as a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Under Rule 23(b), the Plaintiffs must also convince the Court that:

> [T]he questions of law or fact common to the members of the class predominate over

any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

The party seeking class certification bears the burden of proof. *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir.1997). The courts have generally followed a policy of liberal construction of Rule 23 in the context of federal securities fraud actions. *See Kennedy v. Tallant,* 710 F.2d 711, 717–18 (11th Cir.1983); *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied sub nom., Wasserstrom v. Eisenberg,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). In a doubtful case, it is better to allow the case to proceed as a class action. *Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). The Eleventh Circuit has explicitly recognized that securities class actions serve both the public interest in maintaining the integrity of the securities markets and the private interests of investors who would not otherwise obtain redress of grievances through a multiplicity of small individual damage suits. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 727 (11th Cir.1987), *cert. denied sub nom, Robinson Humphrey/American Express v. Sanders,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988).

▆▆ The Court must accept the allegations in the Amended Complaint as being true in considering class certification. When considering a motion for class certification, the court does not inquire whether the plain-

tiffs have adduced sufficient evidence to prevail on the merits of their claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732, 748 (1974); *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 456 (11th Cir.1996), *cert. denied,* 519 U.S. 1149, 117 S.Ct. 1082, 137 L.Ed.2d 217 (1997); *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1557 (11th Cir.), *cert. denied,* 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). Nevertheless, the court must perform a "rigorous analysis" of the arguments asserted in support of class certification. *Gilchrist v. Bolger,* 733 F.2d 1551, 1556 (11th Cir.1984). The Court is not limited to the substance of the parties' pleadings and should allow them to conduct limited discovery and adduce evidence relevant to the class certification issue. *See Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1570–71 (11th Cir.1992). With regard to the need for discovery, the Supreme Court has stated:

> [T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.

*General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) (citations omitted). The decision to grant or deny class certification lies within the sound discretion of the district court. *Giles v. Ireland,* 742 F.2d 1366, 1372 (11th Cir.1984).

### B. RULE 23(A) ANALYSIS

The four prerequisites of Rule 23(a) are commonly referred to as (1) numerosity; (2) commonality; (3) typicality; and (4) adequate representation. The Defendants have made specific objections to typicality and adequate representation. In addition to addressing

these objections, the Court will briefly address the other two requirements as they are met in this action.

### 1. NUMEROSITY

 The numerosity requirement is satisfied if the proposed class is so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). "Impracticable" is not synonymous with "impossible," and the Plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members of the class." *Domestic Air,* 137 F.R.D. at 698. Numerosity is generally presumed when a claim involves nationally traded securities. *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1039 (5th Cir.1981). The Court finds that joinder of potentially thousands of Miller Industries shareholders during the Class Period would be highly impractical if not impossible. Thus, the Plaintiffs have satisfied the numerosity requirement.

### 2. COMMONALITY

 To satisfy the commonality requirement, the Plaintiffs must show the presence of questions of law or fact common to the entire class. Fed.R.Civ.P. 23(a)(2). It is not necessary that all questions of law and fact be common. *Cox,* 784 F.2d at 1557. Nevertheless, "commonality will not exist as long as there is a predominance of individual issues." *Domestic Air,* 137 F.R.D. at 699. The question of commonality in Rule 23(a)(2) overlaps significantly with the predominance requirement contained in Rule 23(b)(3).

 In this case, there are common questions of law and fact including (1) whether Miller Industries' publicly disseminated documents omitted or materially misrepresented material facts concerning its business and business prospects; (2) whether the individual Defendants omitted or misrepresented material facts concerning the company and its prospects; (3) whether the Defendants acted with the requisite scienter in omitting or misrepresenting material facts; and (4)

whether members of the proposed Class have suffered damages as a result. The commonality issue of Rule 23(a)(2) and the predominance issue of Rule 23(b)(3) overlap. The Court finds that the Plaintiffs have satisfied the minimal showing required to establish commonality.

### 3. TYPICALITY

 The typicality requirement is satisfied if the claims and defenses of the representative plaintiffs are typical of the claims and defenses of the class. Fed.R.Civ.P. 23(a)(3). This requirement is satisfied when "a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *Andrews v. American Tel. & Tel. Co.,* 95 F.3d 1014, 1022 (11th Cir.1996). The same factors that satisfy the commonality requirement also may satisfy the typicality requirement. *See Cox,* 784 F.2d at 1557. The standard for judging typicality is set forth in *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332 (11th Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985), where the court held:

> A class representative's claims or defenses must be typical of the claims or defenses of the class. In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

*Id.,* 741 F.2d at 1337 (citation omitted).

 The Defendants contend that the typicality requirement has not been satisfied because (1) one of the proposed class representatives, Ray Schreiber, acquired his Mil-

ler Industry common stock through a private transaction; and (2) the other proposed class Plaintiffs are "individual investors" among a class that would include "institutional investors." These contentions are without merit. In analyzing typicality under Rule 23(a)(3), the Eleventh Circuit has held that "the degree of investment experience or sophistication of each of the class members is irrelevant." *Kennedy*, 710 F.2d at 717. While recognizing that no two investors possess the same information in purchasing shares, the Court nevertheless finds no material variation between the claims of the proposed class Plaintiffs and the claims of any other class member. The named Plaintiffs' claims, including Schreiber's claims, arise from the same events and pattern of misrepresentations and omissions as those of the class they seek to represent. It is unclear what "unique defense" applies only to Schreiber's claims and whether it could defeat a fraud-on-the-market case such as this one. The Defendants have made no showing that Schreiber, in acquiring his shares through a private transaction, relied on information not available to the market. *See Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 208–09 (N.D.Tex.1997). Certainly he relied upon the market price of Miller Industries stock in selling his interest in an acquired company for Miller Industries stock. Accordingly, the Court concludes that the Plaintiffs' claims are typical of those of the proposed class.

### 4. ADEQUATE REPRESENTATION

■ To satisfy the adequacy of representation requirement, the Plaintiffs must show that they, as class representatives, will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). The adequacy inquiry under Fed.R.Civ.P. 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2236, 138 L.Ed.2d 689 (1997). To ensure that a representative will adequately represent the class the plaintiff must satisfy two tests. First, there must be no substantial conflict of interest between the

representative and the class. *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975). If the conflict of interest pertains to the specific issues being litigated, class certification is inappropriate. *Warren v. City of Tampa*, 693 F.Supp. 1051, 1061 (M.D.Fla.1988), *aff'd* 893 F.2d 347 (11th Cir.1989). "Antagonistic interests are not only those which directly oppose one another, but also are those which may be hostile to one another or unharmonious such that one party's interest may be sacrificed for another's." *Telecomm Technical Services, Inc. v. Siemens Rolm Communications, Inc.*, 172 F.R.D. 532, 544 (N.D.Ga.1997). Second, there must be evidence that the representative will adequately pursue prosecution of the lawsuit. *Sosna*, 419 U.S. at 403, 95 S.Ct. at 559.

■ The Defendants first contend that significant antagonisms exist between the proposed Class Plaintiffs and more than half of the proposed class. Specifically, they contend that the following intra-class conflicts exist to preclude class certification: (1) shareholders who retained their Miller Industry shares until after the publication of purported "correcting" information versus those shareholders who sold during the Class Period; (2) shareholders who continue to own Miller Industry shares versus shareholders who sold after the close of the Class Period; (3) shareholders who sold during the Class Period versus shareholders who purchased during the Class Period; and (4) shareholders who purchased early in the proposed Class Period versus shareholders who purchased late in the proposed Class Period.

The Defendants rely primarily on *In re Seagate Technology II Securities Litigation*, 843 F.Supp. 1341 (N.D.Cal.1994), to support their contention that these intra-class conflicts should preclude class certification. In *Seagate Technology II*, the court recognized two potential problematic conflicts in a plaintiff class concerning proof of the amount of price inflation. *Id.* at 1359. First, there could be a conflict between those plaintiffs who sold shares on a particular day, and

those who purchased on the same day. *Id.* Second, a conflict could exist between those plaintiffs who still held their shares at the time of suit and those who sold all or a portion of their shares before the action was filed. *Id.* According to *Seagate Technology II,* while a seller's recovery is increased by minimizing the amount of price inflation existing on the sale date, a purchaser on the same date has the opposite interest. *Id.* Thus, the court expressed serious concern over whether cooperation would be in the best interest of the plaintiffs seeking to maximize their individual recovery. *Id.* The court further opined that the question of price inflation bore substantially on the issues of reliance, materiality, and proximate causation and held that the plaintiffs must present evidence establishing that any such conflicts would not be so serious to preclude a finding of adequate representation. *Id.* at 1365–67.

The courts addressing intra-class conflicts have generally declined to follow the analysis of *Seagate Technology II. See e.g. In re Gaming Lottery Securities Litigation,* 1999 WL 102755 at *7–8, —— F.Supp. —— at ——–—— (S.D.N.Y.1999) (common questions concerning misrepresentations, scienter and materiality overrode any concern over the importance of price inflation which relates primarily to damages); *Weikel v. Tower Semiconductor Ltd.,* 183 F.R.D. 377, 394–95 (D.N.J.1998) (in declining to follow the reasoning of *Seagate Technology II,* the court noted that the class conflicts are largely theoretical and likely to exist in any large securities fraud case); *Picard Chemical, Inc. Profit Sharing Plan v. Perrigo Co.,* 1996 WL 739170 at *6 (W.D.Mich.1996) (court held that the potential for intra-class conflict is a peripheral concern to a class whose primary interest is in proving the materiality of the alleged omissions in an effort to prove liability); *In re Intelligent Electronics, Inc. Securities Litigation,* 1996 WL 67622 at *4–5 (E.D.Pa.1996) (theoretical conflicts discussed in *Seagate Technology II* will exist in any large securities-fraud case and do not warrant denial of class certification). Given the

strong weight of authority against the reasoning of *Seagate Technology II* and the Eleventh Circuit's inclination to certify classes in securities-fraud cases, the Court rejects the Defendants' contentions that the alleged intra-class conflicts should preclude class certification. Any such conflicts are largely peripheral to the main class issues of proving misrepresentations, scienter, materiality and causation. The Court finds that the Defendants' concerns are largely theoretical at this point and may be later addressed by the creation of subclasses. Accordingly, the alleged conflicts present no impediment to certification of the Plaintiffs' proposed class. The alleged intra-class conflicts are primarily with respect to damages issues. The Court believes that it is premature to address the issue of creating subclasses for damage calculations.

■ The Defendants next contend that the lead Plaintiffs have not demonstrated that they will vigorously prosecute their claims or supervise class counsel. The Defendants argue that the lead Plaintiffs are inadequate class representatives because they are unfamiliar with the allegations of the Amended Complaint and are unfamiliar with, unwilling to or unable to discharge their obligations as class representatives. No useful purpose would be served in addressing the Defendants' arguments as to each of the proposed class representatives. The basic flaw of the Defendants' analysis is that the alleged deficiencies of the proposed class representative are irrelevant in a fraud on the market case such as this which is prosecuted by able and experienced counsel.

The legal standard for adequacy of class representation is well established in the Eleventh Circuit. The standard involves inquiry into questions of whether Plaintiffs' counsel are qualified, experienced and generally able to conduct the litigation. *Kirkpatrick,* 827 F.2d at 726; *Griffin v. Carlin,* 755 F.2d 1516, 1532 (11th Cir.1985). "[A]dequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that they will individually pursue with vigor the legal claims of

the class." *Kirkpatrick*, 827 F.2d at 727. The Defendants, quite properly, raise no question as to the qualifications, experience and ability of Plaintiffs' counsel. The fact that they are allowing their counsel to prosecute the case demonstrates the exercise of good judgment and not abdication of their obligations as class representatives. The Plaintiffs have met their burden under Rule 23(a)(4) of showing that they will fairly and adequately protect the interests of the class. Because the Plaintiffs have established the four prerequisites of Rule 23(a), the Court now turns to whether the Plaintiffs can satisfy either Rule 23(b)(2) or Rule 23(b)(3).

### C. RULE 23(B)(3) ANALYSIS

 Pursuant to Rule 23(b)(3), the Court considers (1) whether issues of law or fact common to members of the class predominate over questions affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3). "[I]n analyzing predominance and superiority, the Court must scrutinize the evidence the plaintiffs propose to use in proving their claims without unnecessarily reaching the merits of the underlying claims." *Domestic Air*, 137 F.R.D. at 684. On the question of predominance, Rule 23(b)(3) provides that the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions. *Cox*, 784 F.2d at 1557. Thus, issues in the class that are subject to generalized proof must predominate over those issues that are subject only to individualized proof. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir.1997).

 In this case, the Plaintiffs have alleged a series of misrepresentations and omissions. The Plaintiffs claim that the alleged misrepresentations and omissions related, directly or indirectly, to the rate of expected earnings growth at Miller Industries. The Plaintiffs claim that during the class period the price of Miller Industries' common stock was inflated because of these alleged misrepresentations and omissions, and that they purchased their shares at these inflated prices. The claims of each member of the class arise out of this same set of operative facts. The legal questions common to each member of the class are whether the alleged misrepresentations constitute federal securities fraud. The facts alleged by the Plaintiffs are sufficient to satisfy the requirement that common questions of law and fact predominate over individual questions. A finding to the contrary would be inconsistent with the overwhelming majority of the published decisions in this area.

 To certify a class under Rule 23(b)(3), the Court must also find that the class action is superior to other available methods of adjudication. "In making its determination, the Court must find that difficulties in management will not render this action improper for certification." *Domestic Air*, 137 F.R.D. at 693. Certification cannot be denied because the number of potential class members makes the proceeding complex or difficult. *Id.* Difficulties in management of a case become significant "only if they make the class action a less 'fair and efficient' method of adjudication than other available techniques." *Id.* (quoting *In re Antibiotic Antitrust Actions*, 333 F.Supp. 278, 282 (S.D.N.Y.1971)). The Court finds that a class certification is superior to any other method of adjudication and is the only practical way to proceed. Accordingly, the Plaintiffs have satisfied the requirements of Rule 23(b)(3).

### III. CONCLUSION

For the reasons set forth above, the Plaintiffs' Motion for Class Certification [Doc. 45] is GRANTED.